[No. 13395.   In Bank. — March 19, 1891.]

KATE CONGRAVE ET AL., APPELLANTS, *v.* THE SOUTHERN PACIFIC RAILROAD COMPANY, RESPONDENT.

MASTER AND SERVANT — NEGLIGENCE OF FELLOW-SERVANT. — A master is not liable for injuries suffered by his servant through the negligence of a fellow-servant, unless the master was negligent in the selection of the servant in fault.

ID. — NEGLIGENCE OF CONDUCTOR — INJURY TO BRAKEMAN — LIABILITY OF RAILROAD COMPANY — CONSTRUCTION OF CODE. — A brakeman and a conductor on a railroad train are persons " employed by the same employer in the same general business," within the meaning of section 1970 of the Civil Code, and the railroad company is not liable for the death of one caused by the negligence of the other.

ID. — GRADES OF EMPLOYMENT — NEGLIGENCE OF SUPERIOR SERVANT. — The law of this state recognizes no distinction growing out of grades of

employment of the respective servants of the same employer; and a fore-
man, conductor, or other superior servant who is not clothed with the
authority of a vice-principal, in whose favor the principal has abdicated
his authority, is a fellow-servant of an inferior employee, under the law
applicable to the liability of a master for the negligence of his servants.

APPEAL from a judgment of the Superior Court of
Placer County.

The facts are stated in the opinion of the court.

*D. M. Delmas*, and *Robert T. Devlin*, for Appellants.

Whenever the master authorizes an employee, no
matter what his grade or rank, to issue orders to sub-
ordinates, which it is made the duty of these to obey,
the orders, when issued and obeyed, are the orders of
the master; and if injury results from obedience, the
master cannot claim exemption on the ground that the
relation of fellow-servant existed between the employees
thus ordering and thus obeying. (*Little Miami R. R.
Co.* v. *Stevens*, 20 Ohio, 415; *Cleveland etc. R. R. Co.* v.
*Keary*, 3 Ohio St. 202; *R. R. Co.* v. *Ross*, 112 U. S. 377;
*Brown* v. *Sennett*, 68 Cal. 225; 58 Am. Rep. 8; *Chicago
etc. R. R. Co.* v. *May*, 108 Ill. 288, 298, 299; *Moore* v. *R. R.
Co.*, 85 Mo. 588; *Darrigan* v. *R. R. Co.*, 52 Conn. 285;
52 Am. Rep. 590; *Chicago etc. R'y Co.* v. *Lundstrom*, 16
Neb. 244; *Ross* v. *Railway Co.*, 8 Fed. Rep. 554; *Cooper*
v. *R. R. Co.*, 24 W. Va. 37; *Baltimore etc. R. R. Co.* v.
*Crockett*, 19 Neb. 138; *Sioux City etc. R. R. Co.* v. *Smith*,
22 Neb. 775; *Hardy* v. *Railway Co.*, 36 Fed. Rep. 657;
*Patton* v. *R. R. Co.*, 96 N. C. 455; *Lake Shore etc. R. R.
Co.* v. *Lavalley*, 36 Ohio St. 221; *McDermott* v. *R. R. Co.*,
87 Mo. 285; *Haynes* v. *R. R. Co.*, 3 Cold. 222; *Ragsdale*
v. *R. R. Co.*, 3 Baxt. 426; *Wabash etc. R'y Co.* v. *Hawk*,
121 Ill. 259; 2 Am. St. Rep. 82; *Moon's Adm'r* v. *R. R.
Co.*, 78 Va. 745; *Louisville etc. R. R. Co.* v. *Mitchell*, 87
Ky. 327; *Johnson* v. *R. R. Co.*, 84 Va. 713; *Ayres* v. *R. R.
Co.*, 84 Va. 679; *R. R. Co.* v. *Collins*, 2 Duvall, 114; *Louis-
ville etc. R. R. Co.* v. *Cavens*, 9 Bush, 559; *Hoke* v. *Rail-

*way Co.*, 88 Mo. 360; *Dowling* v. *Allen,* 74 Mo. 13; 41 Am. Rep. 298; *R. R. Co.* v. *Fox,* 31 Kan. 586; *Louisville etc. R'y Co.* v. *Lahr,* 2 Pickle, 335; *Van Amburg* v. *R. R. Co.,* 37 La. Ann. 650; 55 Am. Rep. 517; *R. R. Co.* v. *De Bray,* 71 Ga. 406; *Douglas* v. *R. R. Co.,* 63 Tex. 564; *R. R. Co.* v. *Wheless,* 10 La. 741–746; *R. R. Co.* v. *Bowler,* 9 Heisk. 866; *Cowles* v. *Richmond,* 84 N. C. 309; *Dobbin* v. *R. R. Co.,* 81 N. C. 446; 31 Am. Rep. 512; *Richmond etc. R. R. Co.* v. *Williams,* 86 Va. 165; *Berea Stone Co.* v. *Kraft,* 31 Ohio St. 287; *Chicago etc. R. R. Co.* v. *McLallen,* 84 Ill. 109; Shearman and Redfield on Negligence, secs. 224–241.)

*Hale & Craig,* for Respondent.

The negligence, if any, was the negligence of a fellow-servant, or at least of " another person employed by the same employer in the same general business," within the meaning of section 1970 of the Civil Code of this state. (*Yeomans* v. *Contra Costa S. N. Co.,* 44 Cal. 71; *Hogan* v. *Central Pac. R. R. Co.,* 49 Cal. 128; *Collier* v. *Steinhart,* 51 Cal. 116; *McLean* v. *Blue Point Gravel Mining Co.,* 51 Cal. 257; *McDonald* v. *Hazletine,* 53 Cal. 35; *Beeson* v. *Green Mountain G. M. Co.,* 57 Cal. 20; *Brown* v. *Central Pac. R. R. Co.,* 72 Cal. 523; *Fisk* v. *Central Pac. R. R. Co.,* 72 Cal. 38; 1 Am. St. Rep. 22; *Stephens* v. *Doe,* 73 Cal. 26; *Fagundes* v. *Central Pac. R. R. Co.,* 79 Cal. 97.)

McFarland, J.—This action was brought by the widow and infant son of James W. Congrave, deceased, to recover damages for the death of the latter, who was killed by an accident on a railroad train of the defendant. A demurrer to the complaint was sustained by the court below, and plaintiffs declining to amend, judgment went for defendant. From this judgment plaintiffs appeal.

The complaint avers that said Congrave, deceased,

was a brakeman in defendant's employ, upon a train which left the town of Truckee on March 19, 1888, and started westward, destined for Sacramento City. It is averred, in general terms, that the deceased, as such brakeman, was "placed by said defendant under the control and direction and subject to the orders of the conductor of said train"; but it is not averred that the accident which resulted in the death was caused, in whole or in part, by any order or direction given by said conductor to deceased, or that any order or direction whatever was so given. On the other hand, it appears affirmatively that the accident was not caused by any order or direction given by the conductor to said deceased. The complaint proceeds to state in detail the circumstances, facts, and causes which produced the accident by which the deceased was killed; and they are, briefly, as follows: The train, proceeding westward, had to pass a certain station called Tamarack. "According to the rules and regulations, time-tables and schedules, made by said defendant to govern and regulate the movements of its trains upon its aforesaid roads, and the times of the arrivals and departures of said trains from stations, and for the *instruction and guidance* of its conductors," said train ought to have left Tamarack at the hour of fifty-five minutes past twelve o'clock, noon, of said day, and not earlier; and it was "the duty of said conductor" not to have allowed the train to start before said time. But the conductor, "in disregard of the aforesaid rules, regulations, time-tables, and schedules of said defendant," "negligently and recklessly ordered, caused, and permitted said train to leave said Tamarack station in its westward-bound course a long time before the expiration of the proper and schedule time as aforesaid," viz., at forty-six minutes past twelve o'clock. "By reason of said negligence, recklessness, and breach of duty of said conductor, and the departure of said train from said Tamarack station before its proper and sched-

ule time as aforesaid," the train collided with another train, and by said collision the deceased was killed. It is stated, by way of recital, that he was killed "while at his post obeying the orders and directions of said conductor, and performing his duties as such brakeman"; but there is no averment that any particular order was given, or that any such order contributed in the slightest degree to the accident or to the death. The demurrer contained the general ground of want of facts, and also special grounds, one being that the complaint was uncertain, etc., because "it does not appear therefrom what were the duties, or any of them, required of or to be performed by James W. Congrave, mentioned in said complaint as brakeman on the train mentioned therein."

We think that the demurrer was properly sustained, and that the judgment should be affirmed.

It is entirely clear on the face of the complaint that the deceased and the conductor were co-employees of defendant. It is also clear that the death was caused by the negligence and breach of duty of the conductor in starting the train before schedule time; no other cause of the accident is intimated in the complaint. There is no averment that the defendant was negligent in the selection of the conductor. And the general rule (whatever exceptions there may be to it) is well settled in England and the United States, and particularly in this state, that a master is not liable to his servant for damages sustained by the negligent act of a fellow-servant, unless the master was negligent in the selection of the servant at fault. It is hardly necessary to cite authorities on this point, as we do not understand counsel for appellant to contend against the general rule as above stated. The earliest cases upon the subject in this country in which the principle was applied to railroad companies and their employees are *Murray* v. *R. R. Co.*, 1 McMull. 385, 36 Am. Dec. 268, decided by the supreme court of South

Carolina in 1841, and *Farwell* v. *Boston & W. R. R. Co.*, 4
Met. 59, 38 Am. Dec. 339, decided in 1842 by the supreme
court of Massachusetts, Chief Justice Shaw delivering the
opinion. These leading cases were generally followed in
the United States. Very few cases can be found which
deny the general rule. They were also followed in Eng-
land. (*Hutchinson* v. *York N. & B. R'y Co.*, 5 Ex. 343;
*Wigmore* v. *Jay*, 5 Ex. 354; *Bartonshill* v. *Reid*, 3 Macq.
266.) We need not allude further to authorities in other
jurisdictions, as this court has frequently approved the
rule. In *Yeomans* v. *Contra Costa S. N. Co.*, 44 Cal. 71,
the point was directly involved, and the court, among
other things, say: "The defendants excepted to these in-
structions, and contend that the case is within the reason
of the rule that an employer is not responsible to his
employee for injuries resulting from the negligence, care-
lessless, or unskillfulness of a fellow-employee engaged in
the same general business. The rule itself *cannot be ques-
tioned.* It has been settled by a uniform series of both Eng-
lish and American decisions. The question comes upon
the application of the principle to the present case." (In
that case it was held that plaintiff, who was an express
agent, was a passenger, and not an employee of defend-
ant.) In *Hogan* v. *Central P. R. R. Co.*, 49 Cal. 128, the
court say: " In *Yeomans* v. *Contra Costa S. N. Co.*, 44 Cal.
71, we announced the rule of law on this subject, and re-
ferred to many of the authorities by which it is sustained.
The cases are very numerous, many of them being cited
by defendant, and they are to the effect that the master is
not liable for injuries suffered by a servant through the
negligence of a fellow-servant, unless the master was
negligent in the selection of the servant in fault. The
early cases in Wisconsin, Indiana, and Ohio, relied on
by plaintiff as sustaining his view of the law, have since
been overruled or disapproved." Other cases to the
same point are *Collier* v. *Steinhart*, 51 Cal. 116; *McLean*
v. *Blue Point G. M. Co.*, 51 Cal. 256; *McDonald* v. *Hazle-*

*tine,* 53 Cal. 35; *Brown* v. *C. P. R. R. Co.,* 72 Cal. 523; *Fagundes* v. *C. P. R. R. Co.,* 79 Cal. 97.

It is true, however, that there has been some difference of opinion as to the meaning of the phrase " fellow-servants, " and a few of the cases have recognized a distinction growing out of different grades of employment. There has also been recognized in a few instances what may be called the doctrine of " vice-principalship"; that is, where one general employee is held to have been given the entire and unlimited control and management of the whole business of the principal, so that he stands in all respects in his principal's place, and all his negligent acts are deemed to be the direct acts of the principal. And upon these asserted principles we understand appellant to mainly rest this case. It is contended that as the conductor was superior in grade to the deceased brakeman, and had certain authority over him, and as the conductor, with respect to the running of the train, was the vice-principal, therefore the general rule applicable to fellow-servants does not apply. In support of this position, the case of *Chicago & M. R. R. Co.* v. *Ross,* 112 U. S. 377, is cited.

The facts of the last-named case are not exactly like those in the case at bar. It may be assumed, however, that the opinion of the majority of the court in that case is favorable to the appellants' contention. That seems to be the view taken by the four dissenting justices, Bradley, Matthews, Gray, and Blatchford; for in expressing their dissent they say: "We think that the conductor of the railroad train in this case was a fellow-servant of the railroad company with the other employees on the train. We think that to hold otherwise would be to break down the long-established rule with regard to the exemption from responsibility of employers for injuries to their servants by the negligence of their fellow-servants." But it is to be observed that the majority of the court were not governed or restrained

by any statutory provision. They were at entire liberty
to consider the philosophy of the subject, and to follow
the direction of their own judgments as to what should
be the rule. The decision was not given in view of the
statutory law of California upon the point, or of any
similar law of any other state.

The Civil Code of California went into effect January
1, 1873, and under the head of "Obligations of the Em-
ployer," it provides as follows: "Section 1970. An em-
ployer is not bound to indemnify his employee for losses
suffered by the latter in consequence of the ordinary
risks of business in which he is employed, nor in con-
sequence of the negligence of another person employed
by the same employer *in the same general business,* un-
less he has neglected to use ordinary care in the selec-
tion of the culpable employee." This section of the code
not only restates the rule first established by judicial
decision as to injury received through the negligence of
a fellow-servant, but it clears away to a great extent the
difficulties which may have existed as to the meaning
of "fellow-servants." It declares them to be those em-
ployed "in the same general business." And if the
employees on a train of cars, including the engineer, the
conductor, the fireman, and the brakeman, are not per-
sons employed in the same business, it would be diffi-
cult to imagine a set of men who could be considered as
so employed. They are on the same train; their duties
all appertain to the running of that train; each has his
own work to do, and the joint work of all is necessary to
the business; they are almost constantly in close rela-
tions and personal contact with each other; they have
the fullest opportunities for knowing each others' quali-
fications as to carefulness and skill, and detecting any
failure of duty; and to them applies peculiarly the rea-
soning upon which the general rule was originally
founded.

This clause of the code has received judicial construc-

tion.  In *McLean* v. *Blue Point Gravel M. Co.*, 51 Cal.
255, plaintiff was employed to work in a hydraulic
mine.  One Kegan was "foreman of all work," with
"authority to employ and discharge hands."  Through
the negligence of Kegan, plaintiff was injured by a blast.
Judgment in the trial court went for defendant; and on
appeal, plaintiff's counsel contended, as an exception to
the general rule, "that the employer is liable for injury
to a subordinate servant by the negligence of a supe-
rior."  The court affirmed the judgment, and in its
opinion, after quoting section 1970, said: "The injury
to the plaintiff was caused by the negligence of Kegan,
the foreman of defendant, who was a fellow-servant
with the plaintiff, — 'another person employed by the
same employer in the same general business,' that is,
the business of working the mine of defendant, — Kegan
being in the blasting and plaintiff in the hydraulic de-
partment of the 'general business.' . . . . The law of
this state respecting this subject, as set forth in the code
referred to, recognizes no distinction growing out of
grades of employment of the respective employees; nor
does it give any effect to the circumstance that the fel-
low-servant through whose negligence the injury came
was the superior of the plaintiff in the general service
in which they were in common engaged; and the alleged
distinction in this respect, insisted upon by the defend-
ant's counsel, founded, as he claims, on the general
principles of law and the adjudged cases, requires no
examination at our hands.  (*Collier* v. *Steinhart*, 51
Cal. 116.)"  It is clear that in deciding this case the
court determined that the code swept away the distinc-
tions which appear in some of the "adjudged cases"
on the subject of fellow-servants.  *Collier* v. *Steinhart*,
51 Cal. 116, referred to in the opinion, is still stronger
to the point decided.  Both of these cases were approved
in *McDonald* v. *Hazletine*, 53 Cal. 35, which was also a
case where an employee was injured through the care-

lessness of a foreman.   These cases were again followed
and approved in *Stephens* v. *Doe*, 73 Cal. 26, where it was
held that "the foreman of a mine and a miner em-
ployed to work under his directions are fellow-servants;
and the owner of the mine is not liable for injuries
caused to the latter through the negligence of the fore-
man, unless he fail to use ordinary care in the selection
of the foreman."   The same doctrine was announced in
*Brown* v. *Central Pac. R. R. Co.*, 72 Cal. 523, and *Fa-
gundes* v. *Central Pac. R. R. Co.*, 79 Cal. 97.

It is contended, however, that the principal may give
an employee such authority as will constitute him a "vice-
principal"; that in that instance such employee stands
in the shoes of the principal, and the latter is liable for
the employee's negligence by which another employee is
injured; and that in the case at bar the conductor was
such vice-principal.   The authorities mainly relied on
for this contention are *Beeson* v. *Green Mountain*, 57 Cal.
20; *Brown* v. *Sennett*, 68 Cal. 225; 58 Am. Rep. 8; *San-
born* v. *Madera Flume Co.*, 70 Cal. 261; and *McKune* v.
*Cal. Southern R. R. Co.*, 66 Cal. 302.

In the Beeson case, the death of the deceased was
caused by a defective pipe in a mine; and the only point
decided was, that a principal is liable for injury to an
employee caused by defective machinery.   The principle
that it is the duty of an employer himself to provide
safe materials and structures has never been disputed.
There is some language used in the opinion which, per-
haps, goes further; for which reason, probably, three
justices dissented.   But the case decides nothing more
than as above stated.

In *Sanborn* v. *Madera Flume Co.*, 70 Cal. 261, the
plaintiff was injured by defective machinery used in a
saw-mill, and the court decided, according to the well-
settled rule, that "it is the duty of the owner of a saw-
mill to furnish suitable and safe machinery for the use
of his employees."

*Brown* v. *Sennett*, 68 Cal. 225, 58 Am. Rep. 8, and *Mc-Kune* v. *Cal. Southern R. R. Co.*, 66 Cal. 302, seem to recognize to some extent the doctrine of vice-principalship. In the former case it was held that " the foreman of a gang of men to whom a stevedore delegates the *entire management* of the work of unloading a vessel, with *full direction* to control and supervise it, is not a fellow-servant with his subordinate employees." The court says, in its opinion, that the " defendants *abdicated* the control and management of the entire work to the foreman, and gave him full discretion to control and supervise it." He employed the men, and the court holds that " the foreman was therefore in the performance of the 'job' in place of the master." The case is decided by a mere majority of the court; it makes no allusion to the language of the code, and is hard to reconcile with some former decisions, particularly with *Collier* v. *Steinhart*, 51 Cal. 116, above mentioned, and *McLean* v. *Blue Point Gravel M. Co.*, 51 Cal. 255. But assuming the case to be correctly decided, the facts were very different from those in the case at bar.

In *McKune* v. *Cal. S. R. R. Co.*, 66 Cal. 302, a Department decision, the defendant was engaged in constructing a railroad. The plaintiff was injured by the negligence of one Fisher, who " was material agent and train-dispatcher for defendant, and had charge of the moving of trains." The negligence consisted in his carelessly sending out a special train, which collided with a hand-car, on which plaintiff and others were riding, and injured plaintiff. " A rule of the company declared that no extra engine, either with or without train, unless in company with a regular train, would pass over any portion of the road, *except on an order from the material agent or train-dispatcher.*" The court say: " He represented the defendant; was a vice-principal; he employed and discharged men, and directed the movements of the

trains.   When he directed the extra train to go up the
road, the company directed it."   Assuming this case not
to be in conflict with the numerous decisions above no-
ticed, it is clear that it is not authority for appellant
in the case at bar.   The material-man and train-dis-
patcher seems to have had control of the entire business
of constructing the railroad.   He employed and dis-
charged men, and moved all the trains at his own will,
without any restraint.   The defendant seems to have
"abdicated" in favor of this general agent.   But in the
case at bar the conductor was merely an ordinary em-
ployee who worked with other employees on a train,
each having certain duties to perform.   He had no
power to " direct the movement of trains."   He had no
authority to direct the movement of the particular train
on which he was employed, except in accordance with
the regulations and schedules and time-tables by which
the defendant directed the work to be done.   He had no
power to employ or discharge men.   It cannot be said
that when he started the train before the schedule time
" the company directed it."   He was not then acting *for*
the defendant, but against its express orders.   He did
not therefore come within the doctrine of vice-principal-
ship, — assuming that there may be cases to which that
doctrine would apply.   Moreover, it was said, and we
think it was clearly intended to be decided, in *Brown* v.
*C. P. R. R. Co.,* 72 Cal. 523, that the brakeman and con-
ductor on a railroad train are fellow-servants; and in
*Fagundes* v. *C. P. R. R. Co.,* 79 Cal. 97, it was held that
a laborer, a track-worker, and a conductor were all
fellow-servants.

Our conclusion is, that on the facts of this case as
presented in the complaint, the deceased and the con-
ductor were persons "employed by the same employer
in the same general business," within the meaning of
section 1970 of the Civil Code, and that therefore the

defendant is not liable for the death of the one caused by the negligence of the other.

Judgment affirmed.

DE HAVEN, J., HARRISON, J., PATERSON, J., and SHARP-STEIN, J., concurred.