[Civ. No. 390. First Appellate District.—January 9, 1908.]

## JOHN R. McDONALD, Respondent, v. CALIFORNIA TIMBER COMPANY, Appellant, and GEORGE DENT, Co-defendant.

Negligence—Master and Servant—Unsafe Appliance—Neglect of Fellow-servant—Negligence of Master not Shown.—The master is not liable to a servant for the negligence of a fellow-servant engaged in the same general employment, by reason of an appliance made unsafe by the negligent act of such fellow-servant, where there is no proof that the appliance provided by the master was not of suitable size and strength. The mere happening of the injury raised no presumption that the employer was at fault in providing the appliance.

Id.—Duty of Master as to Appliances.—The master is not bound to furnish appliances that are absolutely safe. His duty is done when he furnishes the employee with reasonably safe appliances, and keeps them in repair.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Chas. B. Younger, for Appellant.

Chas. M. Cassin, Benj. K. Knight, and Cassin & Lucas, for Respondent.

KERRIGAN, J.—This action was brought to recover damages for personal injuries sustained by plaintiff while in the employ of the defendant, the California Timber Company. At the conclusion of plaintiff's case a motion for nonsuit was granted as to defendant Dent. The California Timber Company made no motion for nonsuit, and introduced no testi-

mony, whereupon the case was submitted on the evidence introduced by plaintiff. The verdict and judgment were for plaintiff, and from the judgment and the order denying its motion for a new trial the California Timber Company (hereinafter called the defendant) has taken this appeal.

The plaintiff bases his cause of action upon the alleged careless and negligent use of a wire cable by defendant and of a defective clevis. Defendant's answer, in addition to denying these and other allegations of the complaint, sets forth as defenses that the alleged injuries were the result of the ordinary risks of the business, of the negligence of a fellow-employee, and of the contributory negligence of the plaintiff.

At the date of the accident, April 24, 1903, plaintiff as an engineer was operating a logging donkey-engine for the defendant. He and others were at that time engaged in turning the engine at right angles to its former position. The engine was anchored by a cable line attached to a clevis on the platform of the engine, and was being turned by the application of its own power on a cable known as the main line. The evidence shows that in logging the pulling line or "main line" is attached to the first of a series or chain of logs, and they are pulled toward or from the engine as desired, the engine being held stationary by the anchor line or lines. At the time of plaintiff's injury the engine was anchored to a tree or stump. The main line ran from the engine to a block attached by a short cable or "strap" to a stump, a little to the right or left of the engine, and returned to the engine where the power was applied, thus turning the engine in the desired direction. The anchor line, as just stated, was attached to a clevis on the donkey-engine. The breaking of this clevis was what caused the injuries to plaintiff. Divested of unnecessary detail, the evidence is as follows:

The plaintiff testified: "I have worked in the woods in connection with lumbering twelve years. I have operated stationary engines twelve or thirteen years off and on. I have run engines similar to the one on which I was injured. All the engines on which I have been employed were worked with a wire cable. They all had clevises around the spider and a cable to steady the machine, as this one had. I had been operating this engine about fourteen or sixteen days. My duties as engineer were to stop and go ahead, and to take care

of my engine.   In stopping and going ahead I was governed by the signal of the head man, Emil Nuber, who was the 'donkey boss.'   At the time of the accident the donkey-engine was being turned around from the position in which it was standing to another position at right angles.   I did not know the thickness either of the clevis or the anchor line. I do not know who attached the main line and the anchor line. I had nothing to do with it.   It was the duty of the donkey boss to make those attachments.   He gave orders for them to be fixed.   It was no part of my duty.   The engine was about 12 horse-power without the gearing.   By use of the gearing I should judge it was from 75 to 80 horse-power.   At the time of the accident I had up about 120 pounds of steam. Between 125 and 130 pounds was the limit.   At that time the engine was pulling at its full capacity.   I had full steam on.''   Here one of the jurors asked the question: ''Would not 60 pounds of steam have been enough to turn it (the engine) around if the anchor had been cut loose?'' to which the witness answered, ''Yes, sir; 60 pounds would have turned it around.''   The plaintiff continued: ''A little farther on I saw things were tightening up.   I looked away from me. I thought the grab or strap on the tree to which the main line was fast would give out, would break.   I saw them break more than once.   I was looking towards Nuber so as to get any signal.   I was apprehensive that something would break when I applied the 120 pounds of steam.   I paid no attention to the anchor line; I was looking in the opposite direction.'' On cross-examination he further testified: ''Q.   Suppose there had been no cable from the clevis to the tree, would things have tightened up?   A.   That is what kept it back.''

Frank Omnes, one of the witnesses for plaintiff, testified that he was a blacksmith; that the break in the clevis was clean and at a point just a little to one side of the center thereof; that the clevis was of iron, seven-eighths of an inch thick; that the cable used on the spool (the main line) was three-fourths inch cable, and the anchor line was three-eighths inch cable; that he believed the clevis was one that came with the donkey.

Thomas Dean, another witness for plaintiff, said: ''The clevis broke because of a foul hold on the donkey, a cramp. They got a quartering hold on it.''

Other evidence was introduced in corroboration of some of the testimony just stated.

It would seem that the plaintiff, in applying one hundred and twenty or one hundred and twenty-five pounds of steam, when sixty pounds would have been sufficient to turn the engine, and when, too, he was aware, as he said, that "things were tightening up" and that "something would break," was himself guilty of negligence. If, however, the injury was not the fault of the plaintiff, but was caused by the negligence of the person who fastened the anchor line in the clevis with a "foul hold," or of Nuber, the foreman, or of some other person who was engaged in the same general employment with the plaintiff, then the accident was the result of the negligence of a fellow-servant, and for such negligence the employer is not responsible. (See Civ. Code, sec. 1970; *Congrave* v. *Southern Pacific R. R. Co.*, 88 Cal. 360, [26 Pac. 175]; *Livingston* v. *Kodiak P. Co.*, 103 Cal. 258, [37 Pac. 149].) But this comment is merely in passing, for respondent contends that "even though it be conceded that the fellow-servants of the plaintiff were guilty of negligence, or the most culpable carelessness in moving the donkey or in getting a 'foul hold,' yet if the clevis had been of suitable size and strength the accident would not have occurred, and the defendant cannot escape its liability on account of any negligence of fellow-servants of plaintiff."

An employer is not required to furnish appliances which are absolutely safe. He is, however, under obligation to furnish his employee with reasonably safe appliances to perform the work for which they are designed, and to keep them in repair. (*Higgins* v. *Williams*, 114 Cal. 185, [45 Pac. 1041].) There was no evidence introduced which shows or tends to show that the clevis provided was not of suitable size and strength. The mere happening of the accident raised no presumption that the defendant was at fault in providing the clevis. (*Brymer* v. *Southern Pacific Co.*, 90 Cal. 496, [27 Pac. 371]; *Madden* v. *Occidental etc. S. S. Co.*, 86 Cal. 445, [25 Pac. 5]; *Sappenfield* v. *Main St. etc. R. R.*, 91 Cal. 48, [27 Pac. 590].)

The judgment and order are reversed.

Hall, J., and Cooper, P. J., concurred.