| 68  | 225 |
| 88  | 369 |
| 68  | 225 |
| 100 | 566 |
| 68  | 225 |
| c102 | 463 |

[No. 8743.   In Bank. — December 22, 1885.]

MARGARET BROWN et al., Appellants, v. JAMES SENNETT et al., Respondents.

Employer and Employee — Fellow-servants — Foreman — Negligence of. — The foreman of a gang of men to whom a stevedore delegates the entire management of the work of unloading a vessel, with full discretion

to control and supervise it, is not a fellow-servant with his subordinate employees; and if, in the performance of the work, death or injury results to such an employee through the negligence of the foreman, the stevedore is liable, although he exercised due care in the selection of the foreman.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*George Turner, Mich. Mullany,* and *E. A. Lawrence,* for Appellants.

The foreman was not a fellow-servant with his subordinate employees, and for an injury to one of them caused by his negligence the master is liable. (*Ford* v. *Fitchburg R. R. Co.,* 110 Mass. 240; *Huddleston* v. *Lowell Machine Shop,* 106 Mass. 282; *Beeson* v. *Green M. G. M. Co.,* 57 Cal. 21; *Corcoran* v. *Holbrook,* 59 N. Y. 517; *Flike* v. *Boston & A. R. R. Co.,* 53 N. Y. 549.)

*Mastick, Belcher, & Mastick,* for Respondents.

The defendants are not liable for an injury to one of their employees caused by the negligence of the foreman. (Civ. Code, sec. 1970; *Yeomans* v. *Contra Costa S. N. Co.,* 44 Cal. 72; *Hogan* v. *C. P. R. R. Co.,* 49 Cal. 128; *Collier* v. *Steinhart,* 51 Cal. 116; *McLean* v. *Blue Point G. M. Co.,* 51 Cal. 257; *McDonald* v. *Hazletine,* 53 Cal. 35; *Snowdon* v. *Idaho M. Co.,* 55 Cal. 443; *Beeson* v. *Green Mountain M. Co.,* 57 Cal. 20.)

McKEE, J.—The plaintiffs in the action in hand are the widow and children of John Brown, deceased, and they sue the defendant to recover damages for the commission of a wrongful act, or negligence, by him, which it is alleged caused the death of the deceased.

The case was tried by the court without a jury. At the conclusion of the evidence given for the plaintiffs,

there was a motion made for a nonsuit, which was granted; and afterward a motion for a new trial, made on a statement of the case, was denied; and from the judgment of nonsuit and the order denying the motion the plaintiffs have appealed.

The statement of the case shows that the defendant was a stevedore, who in January, 1881, contracted to unload the British ship Glengarry, then lying at Pacific Street wharf, in San Francisco, with a cargo of coal. For the performance of his contract he provided himself with a stationary engine, with the usual gear and apparatus for hoisting the coal from the hold and dumping it into a hopper or screen on the wharf; and employed the requisite number of men to serve in the positions necessary for discharging.

The machinery consisted of a steam-engine located on the wharf; and the apparatus consisted of four coal tubs or buckets, each of sufficient size to hold about a thousand pounds of coal, with a hoisting-gear on each; and the hoisting-gear was attached by a block and pulleys to a pennant or wire rope, so stretched from the main-top-mast to the foremast as to fix the point of attachment directly over the hatch.

There were twelve or thirteen men employed. One acted as foreman, who had in his position on the deck of the ship control and direction of the men and of the work; another as engineer, whose position was at the hoisting-engine on the wharf. Three, including the foreman, were stationed on deck near the hold, one of them in charge of a line whereby he controlled the tub as it was hoisted from the hold until it cleared the hatch; another to work a trip-line, fastened at the bottom and center of the tub, by which, when the tub was hoisted to the hopper, the coal was dumped from the tub into the hopper; and another in charge of a line by which the emptied tub was controlled and returned through the hatch to the floor of the ship. To fill or refill the tubs,

eight men were stationed directly under the open hatch-way,—two men for each tub,—whose sole duty was to shovel the coal into the tubs, and when each tub was filled to attach the rope-hook thereto, and steady it in its ascent until it cleared the hatchway. For that purpose John Brown was one of the men employed.

The men were competent and skillful to perform the duties assigned to them; and the hoisting machinery and tackle were all in good order.

On the second day of unloading, the shovelers had worked down to the "skin" or floor of the ship, where they cleared a space of about three feet on the floor, directly under the hatch, and about twenty feet below the deck, the coal being around the space for a height of about fifteen feet. In this space two of the shovelers, John Joyce and a man named Frenchie, hurriedly filled their tub unusually high,—"higher," a witness testified, "than the edge of the tub. As near as I could judge, there was about four hundred pounds on the tub, above the edge of the tub." . Loaded in that way the engineer was signaled to start it. It was started and safely hoisted clear of the hatchway; but when above the hatch the tub began to rock and swing, and in that condition it was hoisted until it swung against the mainstay, thirty feet from the deck, with such force that it tilted over, and three hundred or four hundred pounds of the coal fell out, back into the hold and upon the head of Brown, causing his death.

There is no doubt that Joyce and Frenchie were fellow-servants of Brown; and if their wrongful act caused Brown's death, the defendant as their common employer would not be liable (*Hogan* v. *C. P. R. R.*, 49 Cal. 128; *McLean* v. *Blue Pt. M. Co.*, 5 Cal. 257; *McDonald* v. *Hazletine*, 53 Cal. 35); and the nonsuit was properly granted.

But while the evidence tended to show that the act of overfilling the tub may have contributed to the accident, there was also evidence which tended to show that the

accident resulted from the swinging of the overloaded tub against the mainstay, and that that could have been prevented "by stopping the engine a second, so as to let the tub swing away from the stay." According to the evidence, when the tub cleared the hatch there was nothing to obstruct its ascent until it came to the stay. From his position on the deck the duty devolved on the foreman to superintend and control the hoisting. By the sound of his whistle he could signal the hoisting-engine to start or to stop. He did not signal the engine to stop, and the overloaded bucket was hoisted in its eccentric course until it struck the stay and tilted over with the disastrous consequences to the workman.

Assuming as fact that the omission to signal the engineer to stop was the cause of the catastrophe, the question arises, Is the defendant legally liable for the neglect of his foreman?

Undoubtedly the foreman and other men engaged in discharging the cargo were all working for the defendants; they were therefore employees of the defendants, and the relation of master and servant existed between them.

But the case also shows that the defendants abdicated the control and management of the entire work to the foreman, and gave him full discretion to control and supervise it. "I was," testified the foreman, "foreman of the job, . . . . and superintended it for them. . ,. . I employed the men for them, and they paid us all." Under that delegated power the foreman was therefore in the performance of the "job" in place of the master.

That being the case, the defendants would be liable for any neglect of their foreman in the performance of the work, to the same extent that they would be liable for their own neglect if they had personally controlled and supervised it. Where employers owe a duty to their servants in the performance of work contracted to be performed, and for which the servants were employed,

they are responsible to their servants for the manner of its performance.

The general rule upon the subject has been quoted from Shearman and Redfield on Negligence (sec. 102), and approved by this court in *Beeson* v. *Green Mountain Co.,* 57 Cal. 31. The rule is this: "One to whom his employer commits the entire charge of the business, with power to choose his own assistants, and to control and discharge them as freely and fully as the principal himself could, is not a fellow-servant with those employed under him; and the master is answerable to all the under-servants for the negligence of such managing assistant, either in his personal conduct within the scope of his employment, or in his selection of other servants. Such, at least, appears to us to be the rule sanctioned by the weight of authority and by sound reason, though it must be admitted that it is not everywhere established by law." It is said: "The contrary rule prevails in Massachusetts." But Chief Justice Bigelow, in *Sweeny* v. *Old Colony and Newport Railroad Co.,* 10 Allen, 377, states the rule as follows: "If a person undertake to do an act or discharge a duty, by which the conduct of others may properly be regulated and governed, he is bound to perform it in such a manner that those who rightfully are led to a course of conduct or action on the faith that the act or duty will be duly and properly performed, shall not suffer loss or injury by reason of his negligence."

The fact that the master exercised due care in the selection of the person to whom he delegated his power and supervision of the work does not affect the rule which holds him responsible to his servants for the manner in which the work is performed; and if in the performance, death or injury results to a servant from the wrongful act or negligence of the person who is controlling and supervising the performance in place of the master, the master is liable; and the rule exempting him

from liability for such injuries caused by the negligence of a fellow-servant has no application. (*Trask* v. *Cal. S. R. R.*, 63 Cal. 96.) The nonsuit was improperly granted.

Judgment and order reversed, and cause remanded for a new trial.

MYRICK, J., THORNTON, J., and MORRISON, C. J., concurred.