[No. 15371.   Department One. — December 28, 1893.]

CATHERINE STEVENS, ADMINISTRATRIX ETC., APPELLANT, *v.* THE SAN FRANCISCO AND NORTH PACIFIC RAILROAD COMPANY, RESPONDENT.

NEGLIGENCE—ACTION FOR DEATH OF FIREMAN—NEGLECT OF ENGINEER—BURDEN OF PROOF—NOTICE OF INCOMPETENCY.—In an action to recover damages for the death of plaintiff's husband alleged to have been caused through the negligence of a railroad company, in conducting a steam ferry, whereby the deceased, who was, at the time of the accident, a fireman and oiler on one of the defendant's ferry-boats, and while engaged in oiling the machinery was fatally injured through the negligence of the engineer, it is incumbent upon the plaintiff to show not only that the death was proximately caused by the negligence of the engineer, but also that the engineer was incompetent, and that there was negligence upon the part of the defendant in employing him in the first instance, or in retaining him in its service after notice of his incompetency.

ID.—FELLOW-SERVANTS.—A fireman and oiler and an engineer of a ferryboat are fellow-servants employed "in the same general business" within the meaning of section 1970 of the Civil Code, and the fact that the engineer employs and discharges the firemen and oilers who work under him at will does not alter their relation as fellow-servants.

ID.—KNOWLEDGE OF DRUNKENNESS OF ENGINEER—MODIFICATION OF INSTRUCTION.—Where there was some evidence to the effect that the engineer was addicted to drunkenness, and the question as to whether or not knowledge of such drunkenness had been brought home to the defendant was in issue, an instruction asked by the plaintiff that "if an engineer should be perfectly skillful and competent to run an engine, by reason of his intelligence, knowledge, skill and experience, and yet should be unsteady and unreliable on account of a habit of drinking intoxicating liquors to excess, he would not be a competent engineer within the meaning of the law," is properly modified by adding "if the employer knew of the fact or had means of obtaining such knowledge."

INSTRUCTION TO JURY—DUTY OF COURT.—The court is not bound to repeat instruction to the jury already given, nor to instruct upon phases of law or a hypothesis not involved in the case.

EVIDENCE—REPUTATION FOR SOBRIETY—HEARSAY.—Hearsay evidence as to the general reputation of a person for sobriety is not admissible.

Id.—OFFER OF EVIDENCE—DESIGNATION OF SPECIFIC PURPOSE.—Where
    evidence is admissible, not generally, but for some specific purpose, an
    offer to introduce the evidence should designate the purpose, and a gen-
    eral offer of such evidence is properly denied. .

APPEAL from an order of the Superior Court of the
City and County of San Francisco denying a new trial.

The facts are stated in the opinion.

*Henry E. Highton,* for Appellant.

As the evidence tended to establish that, in regard to
the firemen and oilers on the steamer, the defendant had
abdicated its authority to the engineer, with authority to
employ and discharge them, and had complete manage-
ment and direction of them, the engineer was a repre-
sentative of his principal, and not a fellow-servant of the
deceased. (*Brown* v. *Sennett,* 68 Cal. 225; 58 Am. St. Rep.
8; *Beeson* v. *Green Mt. M. Co.,* 57 Cal. 20, 31; *Con. Coal Co.*
v. *Wombacher,* 31 Ill. App. 288, 290, 291; *Hussey* v. *Coger,*
39 Hun, 639; *Clowers* v. *Wabash etc. R. R. Co.,* 21 Mo.
App. 213, 218, 219; *McDermott* v. *Hannibal etc. R. R. Co.,*
87 Mo. 285; *Lyttle* v. *Chicago etc. Ry. Co.,* 84 Mich. 289;
*Cox* v. *Syenite Granite Co.,* 39 Mo. App. 424, 429; *Pautzar*
v. *Tilly Foster etc. M. Co.,* 99 N. Y. 368; *Tyson* v. *South
and North Ala. R. R. Co.,* 61 Ala. 554, 557; 32 Am. Rep.
8; *Trihay* v. *Brooklyn Lead Min. Co.,* 4 Utah, 468, 480.)
And defendant was liable for any carelessness or neglect
of Wiggins to the same extent that it would be liable
for its own carelessness or neglect, if it had directly
controlled and managed the engineer's department, in-
cluding the oilers. (*Brown* v. *Sennett,* 68 Cal. 225; 58
Am. Rep. 8; *Beeson* v. *Green Mt. M. Co.,* 57 Cal. 20, 31;
*Hussey* v. *Coger,* 39 Hun, 639; *Pautzar* v. *Tilly Foster etc.
M. Co.,* 99 N. Y. 368; *Tyson* v. *South and North Ala. R. R.
Co.,* 61 Ala. 554; 32 Am. Rep. 8; *Gilman* v. *Eastern R. R.
Corp.,* 13 Allen, 443, 440; 90 Am. Dec. 210.)  Evidence
of the general reputation of the engineer of being in-
temperate was admissible as tending to show that the
defendant, if it had used due care, must have known

that he was intemperate, and, therefore, an unsuitable servant to be employed by it, and the court erred in refusing to allow such evidence. (*Gilman* v. *Eastern R. R. Corp.*, 13 Allen, 443, 444; 90 Am. Dec. 210; *Monahan* v. *Worcester*, 150 Mass. 439; 15 Am. St. Rep. 226; *Tounissen* v. *Sandford*, 58 Hun, 415; *Grube* v. *Missouri Pac. Ry. Co.*, 98 Mo. 330, 339; 14 Am. St. Rep. 645.) An intemperate person is an incompetent and unfit person to place in charge of an engine. (*Gilman* v. *Eastern R. R. Corp.*, 13 Allen, 443, 444; 90 Am. Dec. 210; *Monahan* v. *Worcester*, 150 Mass. 439, 15 Am. St. Rep. 226; *Michigan Cent. R. R. Co.* v. *Gilbert*, 46 Mich. 176, 182; *Chicago etc. R. R. Co.* v. *Sullivan*, 63 Ill. 293, 299.) The court erred in instructing the jury to the effect that mere negligence on the part of the deceased in placing himself in the way of the machinery would defeat a recovery, as the negligence required to defeat a recovery must be a negligence directly conducing to the injury. (Shearman and Redfield on Negligence, 99; *Richmond* v. *Sacramento Valley R. R. Co.*, 18 Cal. 35; *Needham* v. *San Francisco etc. R. R. Co.*, 37 Cal. 409; *Meeks* v. *Southern Pac. R. R. Co.*, 56 Cal. 513, 519; 38 Am. Rep. 67; *Kline* v. *Central Pac. R. R. Co.*, 37 Cal. 400, 406, 407; 99 Am. Dec. 282; *Flynn* v. *San Francisco etc. R. R. Co.*, 40 Cal. 14, 19; 6 Am. Rep. 595; *Wilson* v. *Southern Pac. R. R. Co.*, 62 Cal. 172.)

*Charles F. Hanlon*, for Respondent.

As the engineer had testified that he was sober on the day of the accident, evidence that he was intoxicated on prior dates was inadmissible. (*Steele* v. *Pacific Coast R. R. Co.*, 74 Cal. 331; *Slatterly* v. *R. R. Co.*, 4 N. Y. Supp. 912; *Robinson* v. *Fitchburg etc. R. R. Co.*, 7 Gray, 92; *Maguire* v. *Middlesex R. R. Co.*, 115 Mass. 239; *Baulec* v. *New York etc. R. R. Co.*, 59 N. Y. 356; *Evansville etc. R. R. Co.* v. *Guyton*, 115 Ind. 450; 7 Am. St. Rep. 458; *Henry* v. *Southern Pac. R. R. Co.*, 50 Cal. 176; *Butcher* v. *Vaca Valley R. R. Co.*, 67 Cal. 518; *Davies* v. *Oceanic S. S. Co.*, 89 Cal. 284; *Field* v. *New York Cent. R. R.*

*Co.*, 32 N. Y. 339; *Sheldon* v. *Hudson River R. R. Co.*, 14
N. Y. 218; 67 Am. Dec. 155; Shearman and Redfield on
Negligence, 333; *Gandy* v. *Chicago etc. R. R. Co.*, 30
Iowa, 422; 6 Am. Rep. 682.)   It was not error for the
court in giving the instruction to the effect that if the
engineer, although competent by skill, was nevertheless
unreliable by reason of excessive drink, he would not
be a competent engineer in law, to add that "if the em-
ployer knew of the fact or had means of obtaining such
knowledge." (*Zumwalt* v. *Chicago etc. R. R. Co.*, 35 Mo.
App. 664; *Huffman* v. *Chicago etc. R. R. Co.*, 78 Mo. 54.)
The engineer and oiler were fellow-servants engaged in
a common employment. (*Collier* v. *Steinhart*, 51 Cal.
116; *McLean* v. *Blue Point etc. Co.*, 51 Cal. 256; *McDonald*
v. *Hazeltine*, 53 Cal. 35; *Brown* v. *Central Pac. R. R. Co.*,
72 Cal. 523; *Fagundes* v. *Central Pac. R. R. Co.*, 79 Cal.
97; *Beeson* v. *Green Mt. etc. Co.*, 57 Cal. 20; *Stephens* v.
*Doe*, 73 Cal. 26; *Howard* v. *Denver etc. Ry. Co.*, 26 Fed.
Rep. 842; *Alabama etc. R. R. Co.* v. *Waller*, 48 Ala. 462;
*Railroad Co.* v. *Rush*, 15 Lea, 151; *Railroad Co.* v. *Hand-
man*, 13 Lea, 429; *Bull* v. *Mobile etc. R. R. Co.*, 67 Ala. 206;
*Murray* v. *South Carolina R. R. Co.*, 1 McMull. 385; 36
Am. Dec. 268; *Jordan* v. *Wells*, 3 Woods, 527; *Henry* v.
*Lake Shore etc. R. R. Co.*, 49 Mich. 495; *St. Louis etc. Ry.
Co.* v. *Britz*, 72 Ill. 256; *Gulf etc. Ry. Co.* v. *Blohn*, 73 Tex.
637; 2 Thompson on Negligence, p. 1034, sec. 37; *Sum-
merhay's case*, 3 Col. 488; *Robinson* v. *H. & T. R. R. Co.*,
46 Tex. 540; *Boatwright* v. *Northwestern R. R. Co.*, 25
S. C. 128; *Louisville etc. R. R. Co.* v. *Martin*, 87 Tenn.
398; *Randall* v. *Baltimore etc. R. R. Co.*, 109 U. S. 478;
*Trewatha* v. *Buchanan etc. Co.*, 96 Cal. 494.)   The burden
of proof is on plaintiff to prove carelessness in the em-
ploy of a fellow-servant. (*Columbus etc. Ry. Co.* v.
*Troesch*, 68 Ill. 548; 18 Am. Rep. 578; *Chicago etc. R. R.
Co.* v. *Geary*, 110 Ill. 388; *Stafford* v. *Chicago etc. R. R.
Co.*, 114 Ill. 247.)   Care in the selection of the fellow-
servant is always presumed. (*Beasley* v. *San Jose etc.
Co.*, 92 Cal. 388.)   The failure of Stevens to give the
usual signal before going in the path of the revolving

crank, was contributory negligence fatal to the cause of action. (Beach on Contributory Negligence, sec. 11; *Dreher* v. *Town of Fitchburg*, 22 Wis. 675; 99 Am. Dec. 91; *Porter* v. *Chicago etc. Ry. Co.*, 21 Wis. 372; *Northern Cent. R. R. Co.* v. *State*, 29 Md. 420; 96 Am. Dec. 545; *Shoenfeld* v. *Milwaukee City Ry. Co.*, 74 Wis. 433.) Comparative degrees of negligence of parties is immaterial; if the injury was occasioned in any degree by the plaintiff's negligence, he is without redress. (*New Jersey Express Co.* v. *Nichols*, 33 N. J. L. 439; 97 Am. Dec. 722; *Cunningham* v. *Lyness*, 22 Wis. 248; *Lockwood* v. *Chicago etc. Ry. Co.*, 55 Wis. 66; *Monongahela* v. *Fischer*, 111 Pa. St. 9; 56 Am. Rep. 241.) No matter how gross the negligence on the part of defendant. (*McCandless* v. *Chicago etc. Ry. Co.*, 45 Wis. 372.) He cannot recover when injured through joint negligence of himself and his co-servant. (*Allen* v. *Maine Cent. R. R. Co.*, 82 Me. 111; *Cornwall* v. *Charlotte etc. R. R. Co.*, 97 N. C. 11; *Gerity* v. *Haley*, 29 W. Va. 98; *Pierce* v. *Atlanta Cotton Mills*, 79 Ga. 782; *Stewart* v. *Philadelphia etc. R. Co.* (Del. May, 1889) 17 At. Rep. 639; *East Tenn. etc. R. R. Co.* v. *Maloy*, 77 Ga. 237; *Trinity etc. Ry. Co.* v. *Mitchell*, 72 Tex. 609; *Ryall* v. *Cent. Pac. R. R. Co.*, 76 Cal. 474; *Wilson* v. *Louisville etc. R. R. Co.*, 85 Ala. 269; *Norfolk etc. R. R. Co.* v. *Emmert*, 83 Va. 640; *Flemming* v. *W. P. R. R. Co.*, 49 Cal. 257; *North Birmingham St. Ry. Co.* v. *Calderwood*, 89 Ala. 247; 18 Am. St. Rep. 105; *Trousclair* v. *Pacific Coast Steamship Co.*, 80 Cal. 521; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 141, 142; *Flemming* v. *W. P. R. R. Co.*, 49 Cal. 257; *McQuilken* v. *Central Pac. R. R. Co.*, 64 Cal. 466; *Clark* v. *Missouri Pac. Ry. Co.*, 35 Kan. 350; *Union Pac. Ry. Co.* v. *Adams*, 33 Kan. 427; *Schofield* v. *Chicago etc. Ry. Co.*, 114 U. S. 615; *Fernandez* v. *Sacramento C. R. R. Co.*, 52 Cal. 50; *Flemming* v. *W. P. R. R.*, 49 Cal. 257; Beach on Contributory Negligence, p. 438; *New Jersey Express Co.* v. *Nichols*, 33 N. J. L. 438; 97 Am. Dec. 722; *Cassidy* v. *Angell*, 12 R. I. 447; 34 Am. Rep. 690; *Berry* v. *Pennsylvania R. R.*

*Co.*, 48 N. J. L. 141; *Vail* v. *Jameson*, 41 N. J. Eq. 648; *Prideaux* v. *Mineral Point Co.*, 43 Wis. 513; 28 Am. Rep. 558; *Pennsylvania R. R. Co.* v. *Matthews*, 36 N. J. L. 532.) The place where he was at work was a dangerous place to work in, and the plaintiff, knowing of the danger, assumed the risk. (*Williams* v. *Delaware etc. R. R. Co.*, 39 Hun, 432; *Appel* v. *Buffalo etc. Ry. Co.*, 111 N. Y. 550; *Haas* v. *Buffalo etc. R. R. Co.*, 40 Hun, 145; *De Forest* v. *Jewett*, 88 N. Y. 264; *Owen* v. *New York Cent. R. R. Co.*, 1 Lans. 108; *Goff* v. *Norfolk etc. R. R. Co.*, 36 Fed. Rep. 299; *Wells* v. *Burlington etc. R. R. Co.*, 56 Iowa, 520; *Baltimore etc. R. R. Co.* v. *Stricker*, 51 Md. 47; 34 Am. Rep. 291; *Abend* v. *Terre Haute etc. R. R. Co.*, 111 Ill. 208; 53 Am. Rep. 616; *Trousclair* v. *Pacific Coast Steamship Co.*, 80 Cal. 524; *Slatterly* v. *New York etc. R. R. Co.*, 4 N. Y. Supp. 911; *Leary* v. *Boston etc. R. R. Co.*, 139 Mass. 580; 52 Am. Rep. 733; *Rains* v. *St. Louis etc. Ry. Co.*, 71 Mo. 164; 36 Am. Rep. 459; *Pittsburgh etc. R. R. Co.* v. *Sentmeyer*, 92 Pa. St. 276; 37 Am. Rep. 684; *Hooper* v. *Columbia etc. R. R. Co.*, 21 S. C. 541; 53 Am. Rep. 691; *Clark* v. *Richmond etc. R. R. Co.*, 78 Va. 709; 49 Am. Rep. 394; *Baylor* v. *Delaware etc. Co.*, 40 N. J. L. 23; 29 Am. Rep. 208; note to 41 Am. & Eng. Railroad Cases, 257; *Dandie* v. *Southern Pac. R. R. Co.*, 42 La. Ann. 686; *Union Pac. Ry. Co.* v. *Estes*, 37 Kan. 731; *St. Louis Bolt etc. Co.* v. *Burke*, 12 Ill. App. 372; *Hewitt* v. *Flint etc. R. R. Co.*, 67 Mich. 76; *Naylor* v. *Chicago etc. Ry. Co.*, 53 Wis. 661; *Eureka Co.* v. *Bass*, 81 Ala. 200; 60 Am. Rep. 152; same effect, *Stafford* v. *Chicago etc. R. R. Co.*, 114 Ill. 247; *Missouri Furnace Co.* v. *Abend*, 107 Ill. 51; 47 Am. Rep. 425; *Pennsylvania Co.* v. *Lynch*, 90 Ill. 335–37; *Foley* v. *Pettee Machine Works*, 149 Mass. 297; *Gilbert* v. *Guild*, 144 Mass. 604; *Ciriack* v. *Merchants' Woolen Co.*, 146 Mass. 190; 4 Am. St. Rep. 307; *Goodnow* v. *Walpole Emery Mills*, 146 Mass. 267; *Johnson* v. *Ashland Water Co.*, 77 Wis. 51; *Starne* v. *Schlothane*, 21 Ill. App. 104; *Central R. R. & B. Co.* v. *Smith*, 82 Ga. 236; *Gibson* v. *Erie Ry. Co.*, 63 N. Y. 449; 20 Am. Rep. 552; *Baltimore etc. R. R. Co.* v. *State*, 24 Md. 271;

*Hutchinson* v. *York etc. Ry. Co.*, 5 Exch. 343; *Illinois Cent. R. R. Co.* v. *Cox*, 21 Ill. 20; 71 Am. Dec. 298; *Sullivan* v. *Mississippi etc. R. R. Co.*, 11 Iowa, 421; *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548; *Lee* v. *Detroit etc. Iron Works*, 62 Mo. 566; *Pittsburgh etc. Ry. Co.* v. *Devinney*, 17 Ohio St. 197; Cooley on Torts, p. 542; *Foster* v. *Minnesota Cent. Ry. Co.*, 14 Minn. 360; *Anderson* v. *Milwaukee etc. Ry. Co.*, 37 Wis. 321; *Davis* v. *Detroit etc. R. R. Co.*, 20 Mich. 105; 4 Am. St. Rep. 364; *Michigan Cent. R. R. Co.* v. *Dolan*, 32 Mich. 510; 2 Thompson on Negligence, sec. 946; *Jenkins* v. *Mahopac Iron Ore Co.*, 32 N. Y. St. 866; *Lake Shore etc. Ry. Co.* v. *Knittal*, 33 Ohio St. 468; *Illinois Cent. R. R. Co.* v. *Neer*, 26 Ill. App. 360; *Senior* v. *Ward*, 1 El. & E. 385.)

SEARLS, C.—Defendant had judgment in this cause. Plaintiff moved for a new trial, and this appeal is prosecuted from an order denying such motion.

The action is by plaintiff as administratrix of her deceased husband, Joseph Stevens, to recover damages for his death while in the employ of the corporation defendant, alleged to have been caused by its negligence.

The defendant at the time of the injury complained of was conducting a steam ferry between the city of San Francisco and Point Tiburon, in Marin county, using for that purpose a steamer called the *James M. Donahue*.

On the 16th of August, 1887, the deceased was a fireman and oiler on said steamer under W. H. Wiggins, who was engineer of the vessel.

The complaint avers that the business of oiling some part of the machinery when the engine was in motion was dangerous and full of peril to the life of the oiler; that it was the custom among oilers to attend to the oiling of the more dangerous portions while the steamer was lying idle at its landing, and the engine motionless; that it was the duty of the engineer to give the oiler notice before starting the engine; that on the sixteenth day of August, 1887, while the steamer was at

Tiburon, and deceased was engaged in oiling the machinery, the engineer, without notice, started his engine, whereby deceased, without fault or negligence, was jammed by the crank of the engine against the frame supporting such engine, and crushed so that he died.

The complaint further avers that Wiggins was and for many years had been the engineer of the steamer; that he was reckless, careless, and negligent in the discharge of his duty as an engineer, was given to habits of intoxication while on duty, and had been twice discharged by the defendant for drunkenness and negligence, all of which was known to defendant but unknown to deceased, who had been employed on the steamer but ten days.

Defendant denies all of the foregoing allegations of the complaint imputing negligence to it or its engineer, or that he was careless, negligent, or intoxicated, or addicted to intoxication, and avers that he was a sober, skillful engineer, and denies that he was ever discharged; avers that the deceased had been in the employ of defendant for about fifteen years, a portion of the time on the steamer *James M. Donahue,* and the remainder upon other steamers, and was well acquainted with the character and habits of engineer Wiggins.

Denies that it was necessary to oil the machinery when at rest, and avers negligence and carelessness on the part of deceased whereby he was injured.

There was a substantial conflict upon all these issues, and the verdict in favor of defendant is conclusive unless errors of law intervened by which the rights of the plaintiff were violated.

The *James M. Donahue* was and for ten days to two weeks had been running as a regular passenger ferryboat in place of the *Tiburon,* which was hauled off for repairs.

She ran in connection with trains on the North Pacific Railroad. A train was due on that road at Point Tiburon from the north at 1:55 P. M., and the habit of the boat was to leave for San Francisco as soon thereafter

as the passengers, baggage, and express matter could be transferred, which would usually be at about 2 P. M.

The steamer usually at this mid-day trip remained at Tiburon say one hour, during which time deceased as oiler was accustomed to oil the machinery.

It is conceded on all hands that when the engine ceases to run water accumulates in the cylinder and fills the vacuum, and, before starting, it becomes necessary to start the machinery slowly, and give it a few revolutions to expel this water and restore the vacuum.

The weight of testimony is to the effect that this movement of the engine usually takes place about five minutes before the time for starting the steamer, by which time the oiling is supposed to be completed, and that many engineers give notice before turning the machinery for such purpose by calling out "all clear" as a signal to the oiler.    There was testimony, however, to the effect that this moving of the machinery to clear the engine may occur at irregular intervals, and that engineers have different methods by which oilers are notified.

The engineer of the *Donahue* testified that his method was to have the oiler, when about to go into a dangerous place, notify him, if in the engine-room, and if not, to take out the starting-bar and place it on the floor of the engine-room, which was a signal to him not to start; that when deceased came under him as an oiler he notified him of this, his rule, and deceased replied he was acquainted with such rule, and that he (deceased) observed it, and often removed the starting-bar, gave him notice, etc.

There is also a conflict in the testimony as to the time at which the engine was started on the occasion upon which deceased was caught by the crank shaft and killed.    Some three witnesses on behalf of plaintiff testified that it was at twenty minutes before 2 P. M. Defendant proved without contradiction that the train arrived at 1:55 P. M. on that day, and several witnesses, including the captain and other officers of defendant,

tostified that the engine was started after or about the moment the train arrived.

The precise position occupied by deceased when killed by the accident is not clear.   He had been seen on the upper deck not long before, but as he was killed by the crank and was found in the crank pit, had oiled on one side of the crank and not on the other, it may fairly be inferred he had come down from the upper deck, and was engaged in oiling about the pillow blocks and crank, when caught by the starting machinery and crushed.

The testimony in reference to the habits of W. H. Wiggins, the engineer, as to sobriety, was, as on other issues, contradictory.   That he partook of intoxicants to a moderate extent was admitted by him at the trial. That he was ever intoxicated when on duty was disputed.

There was testimony that he had drank from one to three times on the day Stevens was killed, which was contradicted beyond the statement that he had taken a single drink, and no one testified as to his apparent intoxication on that day, while as many as seven witnesses testified as to his apparent sobriety.

At the trial counsel for the plaintiff asked the court to instruct the jury as follows: " If you believe from the evidence that the engineer Wiggins on board the steamer *James M. Donahue,* at the time of the accident, August 16, 1887, had charge of a department; that is, the engineering department, on board that boat, with full control over the fireman and oiler, and with power to employ or discharge them, and that he occupied his position for and on behalf of defendant, then, and in that event, you are instructed that the said engineer Wiggins was what is termed in law a vice-principal or agent for the defendant, and was not a co-employee of the oiler Stevens, and if the accident resulted from the negligence of the said engineer within the rules and principles otherwise laid down by the court, the defendant was responsible whether it had, or had not, exercised due diligence and care in the selection of said engineer."

The court refused the instruction, and subsequently and on its own motion gave the following instruction:

" Now, gentlemen of the jury, I instruct you that, as a matter of law, Wiggins, the engineer, and Stevens, the deceased were fellow-servants, and that section 1970 of the Civil Code of this state is the law which must control your verdict in this matter, subject to the facts as you may find them to be. That section reads as follows: as far as it applies to this case I will read it to you: 'That an employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the negligence of another person employed by the same employer, in the same general line of business, unless he has neglected to use ordinary care in the selection of the culpable employee.'"

" Now, the complaint avers and the evidence shows that Wiggins and Stevens were both employed in the same general business by the defendant. That on the day of the accident Mr. Wiggins, the engineer, started the engine of the steamboat and Mr. Stevens, who was then and there acting as oiler, was caught in the machinery and killed.

" Now, under the pleadings and the evidence shown in this action, I instruct you that in order to arrive at your verdict in this case you must determine the following questions:

"Did the death of Stevens occur through the defendant neglecting to use 'ordinary care', as defined to you heretofore, in the selection and retention of Mr. Wiggins? The plaintiff claims it did and the defendant claims it did not—it is for you to determine that question.

"Now, keeping this rule of law and this question which I have just read to you in your minds, and remembering that the evidence is that Mr. Wiggins moved the engine at the time of the accident, it then remains for you to answer this question.

" Did the death of Stevens occur through the carelessness or neglect of Mr. Wiggins, caused by the use of

intoxicating liquors, used then or theretofore by Mr. Wiggins, and of which the defendant knew, or ought by reason of the fact shown to have known.

"The plaintiff claims it did, the defendant claims it did not. This is wholly for you to determine, and it is a great and important question in this case, for it is, in fact, *in part*, and a part of the question of 'ordinary care,' and to which I have just called your attention.

"Now, subject to the next instruction as to contributory negligence—which I will give you—if you should find that the defendant did not use this 'ordinary care' in the selection and retention of its engineer, Wiggins, then your verdict will be for the plaintiff. But if, on the other hand, you should find that the railroad company defendant did use this 'ordinary care' in the selection or retention of its engineer, Wiggins, then your verdict should be in favor of the defendant.

"If you should find that the defendant did not use 'ordinary care' in the selection or retention of its engineer, Wiggins, and that the accident occurred by reason thereof, then you will be obliged to answer this question:

"Did the killing of Stevens occur without contributory negligence on the part of Stevens?

"Contributory negligence is that degree of negligence on the part of the decedent, in this case, which would have contributed proximately or directly to the injury complained of, and it is here—to the loss of life of decedent.

"The plaintiff says it did, and the defendant says it did not, and it is for you to determine. If the plaintiff is correct on this point she would be entitled to a verdict in her favor; if, on the other hand, the defendant is correct on this point then the railroad company, defendant, would be entitled to a verdict in its favor."

The court also at the request of defendant gave the following:

"If the defendant corporation here has used ordinary care in the selection and retention of Wiggins as en-

gineer, then, if Stevens was free from all fault and Wiggins was to blame altogether for the accident, it is a matter between co-employees, and the corporation, I instruct, has discharged its duty, and your verdict must be against the plaintiff and in favor of the defendant corporation."

The contention of appellant is, that as to the fireman and oiler on the steamer *Donahue,* the defendant had abdicated its authority to Wiggins, and that the latter had full power to employ and discharge them, and as he had complete management and control of them, that as to them Wiggins was their master.

That, under such circumstances, the engineer was a representative of his principal, a vice-principal and not a fellow-servant of the deceased, and, as a sequence, defendant is liable to the same extent that it would be for its own carelessness or neglect, had it directly managed the engineer's department.

Many cases are cited in support of this theory, and among them *Brown* v. *Sennett,* 68 Cal. 225; 58 Am. Rep. 8.

There is much contradiction between the decisions of the several states upon the question involved in the proposition presented by appellant's instruction.

In this state, however, it is believed the recent decisions have settled the question adversely to the contention of the appellant. The deceased oiler and engineer Wiggins were fellow-servants, employed in the same general business, and the fact, if it was a fact, that the engineer employed and discharged the firemen and oilers who who worked under him at will, did not alter their relations as fellow-servants. (*Collier* v. *Steinhart,* 51 Cal. 116; *McLean* v. *Blue Point Min. Co.,* 51 Cal. 255; *Daves* v. *Southern Pacific Co.,* 98 Cal. 19; 35 Am. St. Rep. 133.)

Being fellow-servants, it was incumbent upon plaintiff to show that the death of Joseph Stevens was proximately caused by the negligence of the engineer, and that the latter was incompetent and that there was negligence upon the part of the defendant in employing him in the first instance, or in retaining him in its service

after notice of his incompetency.   (*Holland* v. *Southern Pac. Co.*, Cal. Nov. 8, 1893, *ante*, p. 240.)

Section 1970 of the Civil Code has placed in the category of "fellow-servants" all those who are employed by the same employer *in the same general business.*

The section has been construed so often by this court, and with such uniformity and unanimity of opinion, that further remarks on the subject are not deemed necessary.   (*Congrave* v. *Southern Pac. R. R. Co.*, 88 Cal. 360; *Yeomans* v. *Contra Costa S. N. Co.*, 44 Cal. 71; *Hagan* v. *Central Pac. R. R. Co.*, 49 Cal. 128; *McDonald* v. *Hazletine*, 53 Cal. 35; *Brown* v. *Central Pac. R. R. Co.*, 72 Cal. 523; *Fagundes* v. *Central Pac. R. R. Co.*, 79 Cal. 97; *Stephens* v. *Doe*, 73 Cal. 26.)

The case of *Brown* v. *Sennett*, relied upon by appellant, was commented upon in *Congrave* v. *Southern Pac. R. R. Co.*, 88 Cal. 360, and evidently is not regarded as authority in cases like the present.

The conclusion is reached that the instruction asked by appellant and refused did not properly embody the law applicable to the case, and that the instructions given by the court on its own motion contained correct expositions of the law.

Plaintiff asked an instruction as follows:

"If an engineer should be perfectly skillful and competent to run an engine, by reason of his intelligence, knowledge, skill, and experience, and yet should be unsteady and unreliable on account of a habit of drinking intoxicating liquors to excess, he would not be a competent engineer within the meaning of the law."

The court refused the instruction as asked, and modified it by adding the following:

"If the employer knew of the fact or had means of obtaining such knowledge"; with which addition it was given, and to which addition by the court plaintiff excepted.

The instruction as asked may be conceded to be correct as an abstract proposition of law.

As asked, however, it was well calculated to mislead

the jury, for the reason that there was some evidence to the effect that the engineer, Wiggins, was addicted to drunkenness, and whether or not knowledge of such drunkenness (if the jury found it to exist) had been brought home to the defendant was an issue in the case, an issue which the instruction, as asked, entirely ignored.

Again, the court had, in the 13th, 16th, 27th, 28th, 30th, 32d, 33d, 34th, 36th, and 39th instructions, given at the request of the plaintiff, and in the instructions given on its own motion, correctly declared the law upon the question involved in the modified instruction, and had it refused this instruction altogether it would not have been error.

Exception is also taken to the following instruction given on behalf of defendant:

"The plaintiff in her complaint alleges a duty in regard to the engineer on the question of signals, but she nowhere refers in her complaint to any corresponding duty on the part of the oiler to give a signal to the engineer.

"Now the defendant has adduced testimony to show that it was the duty as well as the practice of Stevens, during the period immediately before the accident, to give notice to the engineer by taking out the starting-bar, or by notice whenever he desired the machinery to remain still while the ship was lying still at the ferry-slip.

"Therefore, if you find that the accident was caused by Stevens failing to give any signal, and that it was the practice and rule on that boat at that time for him to give it, and he was thereby killed, then, even if Wiggins was intoxicated, or was careless, or was to blame, it would make no difference, as I instruct you that in that case the contributory negligence on the part of Stevens would defeat plaintiff's action and would make it your duty to bring in a verdict against the plaintiff and in favor of the defendant corporation."

In this instruction and another involving negligence on the part of Stevens if he needlessly placed himself in

the way of the machinery, etc., appellant contends that the instructions are erroneous, in that they hold that mere negligence on the part of defendant would defeat a recovery, whereas the negligence which defeats a recovery must be a negligence which directly conduces to the injury, and while the injured party may have been negligent, yet if the injury was caused by the failure of defendant, after such notice as would put a prudent man upon his guard to use ordinary care for the purpose of avoiding such injury, the party injured is entitled to recover, etc.

The immediate cause of Stevens' death was not in dispute. It was conceded on all hands that he was in such proximity to the machinery of the steamer that when it was started it caught and crushed him.

The real question involved related to his being rightfully in such position that starting the machinery would produce this result. Plaintiff sought to show that the deceased was entitled to notice from the engineer before starting the engine. Defendant, on the other hand, introduced evidence tending to show that different engineers had different rules; that the rule of the engineer, Wiggins, was to have the oiler inform him when going into a dangerous place, and if not in his engine-room to withdraw the starting-bar and place it on the floor of the engine-room, which was notice to him not to start; that he instructed Stevens as to this rule when the latter first came with him; that the latter replied that he was familiar with the rule, and acted upon it until the day in question, when he gave no notice, and, as a consequence, was killed by the starting machinery. If this was true there can be no serious question but that Stevens was in fault.

The court is not required to instruct upon phases of the law not involved in the case, and what the duty of defendant's engineer would have been had he in fact known the position of Stevens when he started his engine, did not concern the court or jury, for the reason that there is nothing in the testimony to show that the

engineer, or anyone else on the boat saw or knew what the position of Stevens was until the engine started, when he cried out and the engineer at once stopped the engine, the crank not having moved over two or three feet, when he was found crushed.

It follows that the hypothesis contended for was foreign in the case.

If the jury believed the theory of plaintiff, that it was the duty of the engineer to give notice before starting the engine, then as to that branch of the case plaintiff was in the right, irrespective of knowledge of the whereabouts of Stevens by the engineer.

Another exception of appellant is founded upon the refusal of the court to permit plaintiff to prove the general reputation of Wiggins for sobriety, among those employed in the ferry service.

Intemperance, sobriety, and drunkenness are facts to be proven like other facts. The proffered evidence was hearsay, concerning which Greenleaf, at section 99, volume 1, of his work on Evidence, says: "Hearsay evidence, as thus described, is uniformly held incompetent to establish any *specific fact* which in its nature is susceptible of being ·proved by witnesses, who can speak from their own knowledge."

Plaintiff had already introduced witnesses upon the subject, who had testified as to these specific facts, and upon the face of the offer the testimony was not admissible.

There are some exceptions to the general rule enunciated by Greenleaf, but the offer of plaintiff failed to bring the proffered testimony within any of the exceptions. In other words, the offer was general. In his brief, counsel for appellant argues that this evidence was proper as tending to bring knowledge of the habits of the engineer home to defendant. If offered for that specific purpose, it should have been so specified, which was not done. Where evidence is admissible, not generally, but for some specific purpose, the offer should designate the purpose.

We have patiently examined the record bearing upon the numerous exceptions reserved at the trial. To comment upon all of them in detail would swell the decision beyond reasonable limits, and as they are either without merit, or not of sufficient importance to call for a reversal, no useful purpose will be subserved by their elaboration.

The cause was properly tried, and the verdict of the jury was in consonance with the weight of testimony.

The order denying plaintiff's motion for a new trial should be affirmed.

VANCLIEF, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the order denying plaintiff's motion for a new trial is affirmed.     GAROUTTE, J., HARRISON, J., PATERSON, J.

Hearing in Bank denied.