[Civ. No. 257.  Third Appellate District.—March 16, 1907.]

## JOSEPH SCHWIND, Respondent, v. FLORISTON PULP AND PAPER COMPANY, Appellant.

ACTION FOR DEATH—NEGLIGENCE OF FELLOW-SERVANT.—An employee is not liable for a death caused by the negligence of a fellow-servant of the deceased, employed in the same general business by the same employer, where there was no negligence of the employer in employing such fellow-servant, and no remissness in the conduct of the employer toward the deceased.

ID.—CONTRIBUTORY NEGLIGENCE OF DECEASED—WALKING BETWEEN CARS LIABLE TO BE MOVED—LACK OF ORDINARY CARE.—The deceased was guilty of contributory negligence in attempting to cross a railroad track between the cars of a train which were liable to be moved at any time, without taking any precaution to avoid the injury, which he might have avoided by the use of ordinary care.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.  John Hunt, Judge.

The facts are stated in the opinion of the court.

Van Ness & Redman, for Appellant.

D. W. Burchard, and G. W. Schell, for Respondent.

BURNETT, J.—The action is for damages brought by respondent for the death of his minor son.

The complaint alleges that "on July 31, 1901, the said Joseph Schwind, minor son of the plaintiff herein, was in the employ of the defendant corporation in the electrical department thereof.  That on said day, and at the times

hereinafter mentioned, and for a long time prior thereto, the defendant operated and maintained a railroad track that was situated and placed parallel to, and a short distance from, the factory building owned and operated by it at Floriston. That upon said track, as aforesaid, the defendant, at all of said times hereinbefore mentioned, operated cars propelled by steam for the purpose of transmitting and carrying freight to and from said factory. That near the center of said factory and fronting, adjacent to said railroad tracks, as aforesaid, a door was placed and maintained by the defendant, through and by which employees and those having occasion to go to said factory gained admission thereto and exit therefrom. That a pathway existed leading from said entrance across the track at right angles to the public highways of said town of Floriston, which said pathway during all of said times was used with the full knowledge, consent, and direction of the defendant, its officers and agents. In the manipulation of the said railroad it was the habit and custom of the defendant to so adjust its freight-cars as to keep said pathway space open in order to enable the said path to be traveled. That on the thirty-first day of July, 1901, and about the hour of 4:30 o'clock P. M. of said day, and while the said Joseph Schwind, minor child of this plaintiff, was so employed by the defendant corporation, a superintendent directed the said Joseph Schwind to go on an errand, which necessitated and required that the said Schwind should leave said building, cross said track, and go to another part of the said town of Floriston. That when the said Joseph Schwind, in pursuance of such direction, stepped out of the door of said factory, there was a freight train standing on said track, broken, so as to leave two box-cars about four feet apart at the ends, in such a manner as to leave said pathway open for purposes aforesaid. That it was the custom and habit of said defendant at all said times to have said passage kept open and free in said manner as herein stated. That while the said Joseph Schwind, pursuant to said directions as aforesaid, was walking along the said trail and passageway, and at the moment that he was crossing between said cars so left open, the defendant negligently and without warning caused said cars to collide, and thereby to mangle and kill the said Joseph Schwind. That the said Joseph Schwind was not guilty of any act that contributed

to said injury. That the servants and employees of defendant in charge of said train caused to be precipitated against one of the box-cars a freight-car that was not in charge of any brakeman, or other person, nor attached to any engine that could control the same, and no signal of any character was given to the said Joseph Schwind of the approach of said car, in order to enable him to protect himself or escape from said injury.''

In the answer there is a specific denial of the foregoing allegations except as to the ownership and use of the railroad and the employment of the said Joseph Schwind, as to the existence of the door as alleged in the complaint, as to the allegation in regard to the freight train standing on the track, and as to the train not being attached to any engine, but it was denied that the ends of the cars were more than two feet apart. The answer also alleges ''the fact to be that the said minor attempted to pass between the ends of said cars knowing that the same might at any moment be brought together, and that, as was the fact and as he well knew, it was not necessary for him to cross said track between said cars; and knowing also, as was the fact, that at other places said track could be crossed where there were no cars and where said track could be crossed without any danger whatever''; and furthermore, that ''if the injury to and death of said minor was due to any negligence other than his own, it was the negligence of a person or persons employed by defendant in the same general business with said minor.''

Counsel do not entirely agree in their statements of what was shown at the trial, but the evidence must be viewed, undoubtedly, in the most favorable light to sustain the verdict of the jury. The following statement of facts is deemed sufficient for the purposes of this opinion: The operation of the sidetracks or switches is entirely under the control of the appellant. The location of the works is in a sort of a flat, with precipitous mountains on each side, and the hotel and residence portions of the town are on one side of the tracks, and the works of the company are on the other or Truckee river side. All the operatives and employees live across the tracks from the mill, and in order to go to and from their work it is necessary for them to cross the line of the Central Pacific and the main switch. It was the custom of the company when cars were standing on the switch to leave an open

space varying from three to ten feet on the line of a trail that reached from the works across the two tracks and up the mountain near the homes of the employees. Respondent contends that ''a pair of stairs had been placed by the company on the precipitous bank of the track of the Central Pacific to enable the employees to cross said track, and this open space left between the cars was in apposition to such stairway.'' Appellant, however, declares that this was placed there by Hirschler, the yard foreman, of his own accord, and that the company ''provided for the women a board walk with a hand-rail upon it near the finishing room, where the women were employed, and for the men a trail leading down the embankment between the Truckee switch and the boiler-house, and connecting at its upper end with a wooden bridge, from which a path ran up to the cottages on the hillside.'' However, this difference seems immaterial, and at any rate the employees generally in going to and coming from work used the trail and steps as claimed by respondent, and their use of the same must have been known and acquiesced in by the company. The course, by any other route, was more lengthy and circuitous. The duties of young Schwind called him to different portions of the lands of the company at irregular hours in the performance of his duty, although there is no evidence how he happened to be crossing the switch at the time of the accident, nor where he was going nor by whom, if anyone, he was sent. The allegation of the complaint in that regard is unsupported, but this circumstance is of no consequence, as it is apparent that he was not a trespasser. On the day he was killed there is evidence that the cars were in their usual position at the noon hour and that the employees, including young Schwind, going to and from lunch, passed between two box-cars as customary; and that in the afternoon, probably about 3 o'clock, in attempting to pass between them again going toward the town, young Schwind was caught and killed. The freight-cars were precipitated upon him without any warning or signal indicating their approach. There is a downgrade of about thirty-one feet in fifteen hundred feet, the distance from the Floriston end of the switch to the crossing where young Schwind was killed. An employee of appellant, one Hirschler, who had charge and management of the cars, undertook to let down six empty box-cars from the

Truckee end of the switch immediately before the accident; no one was assisting him and the cars came together with such force as to drive the train on both sides of the crossing together and impelling the cars on the opposite side of the crossing some distance. There was no engine used, as one was not needed, the practice being to let down by gravity the empty cars and to send the engine down after they were loaded. Respondent claims that there were not enough men to hold the cars in check, and that appellant knew it was the custom and habit of Hirschler to attempt to let said cars down alone, and did not require him to use an adequate number of men to protect the lives of the employees. All the evidence, however, shows that Hirschler had under his direction quite a number whom he could have summoned to his assistance, but the truth is, Hirschler needed no assistance. It was an easy task to let down the cars, and he had always accomplished it without any difficulty. In fact, he had managed a much larger number without assistance. There was no negligence exhibited in letting down the cars. It was necessary that they should come with some force in order to couple them with the cars below. If there was the omission of any duty in that behalf it was in the failure to give notice or warning of the approach of the cars, but before bringing the cars down Hirschler sent ''Norton to the head end to look out and see that nobody would get on the track.'' At the time of the accident Norton was standing on a car below the crossing, but he was leaning over the brakes and did not see young Schwind. Hirschler had left the box-car on which he was standing and was running down to see that the coupling was made, and was within five or six feet of Schwind when the latter was struck. It is obvious that if the company was under legal obligation to give warning at the crossing of the approach of the cars it furnished the men to do it. There were two men, Norton and a helper, who were in charge of the cars below; either might have stationed himself so as to command a view of the crossing, and thereby have given warning to Schwind of the approach of the cars. Even Hirschler could have run down to the crossing in advance of his cars, if the view was interrupted, to caution the deceased. But these men were all fellow-employees of the deceased, and their negligence or the negligence of any one of them cannot be imputed to appellant. There could be no

question about Norton and his helper. Respondent, however, somewhat mildly questions the proposition as applicable to Hirschler. The learned judge of the court below, though, instructed the jury that "under the law an employer is not responsible for the injuries or death of an employee caused solely by the negligence or carelessness of a fellow-employee. You are instructed that the deceased, Joseph Schwind, and Hirschler, defendant's yard foreman, were fellow-employees; and if you find from the evidence that the death of said Schwind was caused by the negligence or carelessness of Hirschler alone your verdict must be for the defendant." This seems to be in line with the decisions. In *Cosgrove* v. *Southern Pacific R. R. Co.,* 88 Cal. 360, [26 Pac. 175], it was held that a brakeman and conductor were coemployees of defendant. In the discussion it is said: "It is also clear that the death was caused by the negligence and breach of duty of the conductor in starting the train before schedule time. There is no averment that the defendant was negligent in the selection of the conductor." (And it may be remarked that no similar claim is made here.) "And the general rule (whatever exceptions there may be to it) is well settled in England and the United States, and particularly in this state, that a master is not liable to his servant for damages sustained by the negligent act of a fellow-servant, unless the master was negligent in the selection of the servant at fault."

In *Trewatha* v. *Buchanan etc. Co.,* 96 Cal. 494, [28 Pac. 571, 31 Pac. 561], it is stated in the syllabus that "an engineer employed to operate an engine and hoisting tackle, used upon and in connection with the main shaft of the mine, to hoist the rock and debris therefrom, and to raise and lower the miners, is a fellow-servant with a workman in the mine."

In *Daves* v. *Southern Pacific Co.,* 98 Cal. 19, [32 Pac. 646], it is stated that "the law recognizes no distinction growing out of the grades of employment of the respective employees, nor does it give effect to the circumstance that the fellow-servant, through whose negligence the injury was received, was the superior of the plaintiff in the general service in which they were both employed."

In *Stevens* v. *San Francisco etc. R. R. Co.,* 100 Cal. 555, [35 Pac. 165], it is held that "a fireman and oiler and an

engineer of a ferry-boat are fellow-servants employed 'in the same general business,' and the fact that the engineer employs and discharges the fireman and oilers does not alter the relation.''

In *Livingston* v. *Kodiak Packing Co.*, 103 Cal. 258, [37 Pac. 149], a mate of a vessel and a servant employed in the steward's department are declared to be fellow-servants.

In *Donovan* v. *Ferris*, 128 Cal. 48, [79 Am. St. Rep. 25, 60 Pac. 519], it is held that ''it is not the duty of a master to give personal warning of danger to persons employed in the business of blasting, and the employment of a competent servant to give them needed warning ends the responsibility of the master. Such a competent servant is not a vice-principal but a fellow-servant of those to be warned by him.''

The cases of *Brown* v. *Sennett*, 68 Cal. 225, [58 Am. Rep. 8, 9 Pac. 74], *Beeson* v. *Green Mountain Min. Co.*, 57 Cal. 20, and *Northern Pac. R. R. Co.* v. *Herbert*, 116 U. S. 642, [6 Sup. Ct. Rep. 590], are cited by respondents to the contrary. The facts in those cases distinguish them from the case at bar, and besides, the first two have been modified and virtually overruled, and the decision of the United States supreme court has been shown to be inapplicable in this state by the Cosgrove case, *supra*. It cannot be doubted that deceased and Hirschler were ''employed by the same employer in the same general business,'' as provided by section 1970, Civil Code, and the negligence of either toward the other could not be charged against the company. The ''general business'' of the company was the manufacture and sale of paper, and both contributed to the promotion of that business. It is of no consequence that they were engaged in different departments or that the grades of their employment were not the same. Neither had any control of the other nor could it be said that one represented the company in any different sense from the other. It is difficult to conceive what relation they sustained to each other if not that of fellow-employees.

It is equally apparent, it seems to us, that the company was not guilty of any remissness in its conduct toward the deceased. No complaint is made of the ''appliances'' furnished. The cars and railroad track were properly constructed and equipped. The company furnished sufficient

and capable men to manipulate the cars. The negligence causing the death of the deceased must have been that of himself or his fellow-workmen. It is no answer to say that appellant did not furnish a safe crossing place for the employees. Any railroad crossing is not free from more or less peril. This was not more perilous than others. Besides, it was not the only one furnished by the company.

Again, as already seen, there could scarcely have been any danger, and no accident would have befallen the deceased if he and the other employees who were operating the cars had exercised the care which ordinary prudence and discretion demand.

Again, there is no issue raised as to the negligence of appellant in its failure to furnish a proper crossing. The gist of the charge is that the crossing was negligently closed, whereas it was the custom to have it kept open and free.

Under the decisions, also, there would seem to be no escape from the conclusion that deceased was guilty of contributory negligence in attempting to cross the track as he did. We must assume that on account of the box-car near him and the curve in the track that he could not see the approaching cars, and that he could not hear them on account of the noise of the machinery of the company's plant, but that would seem to be an additional reason why he should have exercised care. He certainly took desperate chances in acting as he did. If he had walked the length of a car toward Truckee he could have passed around the end of the train and he could without any difficulty have seen the approaching cars.

In *Memphis etc. R. R. Co.* v. *Copeland,* 61 Ala. 376, it is said: "The attempt thus to pass between the cars of a train which he must have known was liable to be moved cannot be classed as less than negligence. It borders on recklessness." To the same effect are *Lewis* v. *Baltimore etc. Co.,* 38 Md. 588, [17 Am. Rep. 521] ; *Hudson* v. *Wabash etc. Co.,* 123 Mo. 445, [27 S. W. 717] ; *Lake Shore etc. Co.* v. *Pinchin,* 112 Ind. 592, [13 N. E. 677].

In *Studer* v. *Southern Pacific Co.,* 121 Cal. 400, [66 Am. St. Rep. 39, 53 Pac. 942], our supreme court has said: "An attempt to pass between the cars of a train that is liable to move at any instant, without taking any precaution to avoid danger, is itself an act of negligence when decided by the standard of common prudence, and has been so held by

courts whenever the occasion has been presented; and the act is equally negligent whether it is done at a street crossing or elsewhere.''

If the occurrence had taken place at an hour when most of the employees were accustomed to go to and from work, a different question might be presented. At those times it was the practice of the company not to move the cars in the vicinity of the crossing, but during working hours they were likely to be moved at any time. This the deceased knew and he was, of course, charged with notice of the danger incident to a railroad crossing, and the duty of ''one intending to cross to avail himself of every opportunity to look and listen for approaching trains.'' The increase of the peril by the narrowness of the opening between the cars made more urgent his duty to protect himself by resort to the palpable means at hand. However lamentable the unfortunate occurrence, in legal contemplation it was the result of decedent's own negligence.

. The judgment and order denying the motion for a new trial are reversed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 15, 1907.